**PICA SERVICES, INC., et al., Plaintiffs,**

**v.**

**Jack C. BEHRINGER, et al., Defendants.**

**No. 80–6384 CIV.**

United States District Court,
S.D. Florida,
Civil Division.

July 20, 1984.

Charles Pasco, Hallandale, Fla., for plaintiffs.

Linwood Cabot, Fort Lauderdale, Fla., for defendants.

## FINAL JUDGMENT

NESBITT, District Judge.

THIS is an action brought by PICA SERVICES, INC., (hereinafter "Services") and VINCENT J. PICA (hereinafter "Pica), against JACK C. BEHRINGER, STEVEN DAVID, ERNEST PINTO, and JUNE M. SILVERNALE, both individually and in their capacities as Commissioners of the Port Everglades Authority (hereinafter "Commissioners"). The suit is brought under 42 U.S.C. § 1983, and alleges both a denial of due process and intentional and unlawful discrimination against the Plaintiffs by the Defendants. The Plaintiffs have also alleged a pendent state law claim alleging that the Defendants defamed PICA. This action was tried non-jury by the Court June 28, 1984. Upon Defendants' Motion for Directed Verdict at the close of the Plaintiffs' case, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### A. *Undisputed Issues of Fact.*

The Court has jurisdiction over the parties, and over the claims presented pursuant to 28 U.S.C. § 1331 and 1343. It is uncontested that SERVICES made application for a permit to engage in the meat inspection business at Port Everglades. It is also uncontested that the processing of this application provides the factual framework for this suit. It is also admitted that the Defendants were among the Commissioners of Port Everglades Authority at all times relevant to this suit. Finally, it is undisputed that on May 8, 1979, the Commission voted to approve the grant of a permit to SERVICES, and that on May 17, 1979, the Commission voted again on the issue, denying the grant of the permit to SERVICES.

B. *Disputed Issues of Fact.*

The Plaintiffs claimed that the May 17, 1979 vote denying the grant of a permit to SERVICES was an act of intentional discrimination against the Plaintiffs, based on rumors and false articles in the media linking PICA with organized crime figures. As support for this claim, Plaintiffs point to the fact that numerous newspaper articles ran in the interval between the two Commission votes in issue in this suit, reporting PICA's alleged underworld ties.

The Defendants have denied these claims by Plaintiffs. Defendants claim that they were either unaware of any stories about the Plaintiffs and/or that these stories were not considered by them. Through the testimony of Mr. David, one of the Defendants, and Mr. Redlhammer, the Director of Foreign Trade at the Port at the time in issue, the Defendants made the claim that the decision to deny SERVICES permission to operate was based on economic considerations looking to serve the best interests of the Port Authority.

Based on all the testimony presented on the issue, the Court finds that the Plaintiffs have failed to offer any evidence to support their claims of intentional discrimination. Even PICA, in his testimony at trial, admitted that he had no knowledge of why the Commission denied permission. He could only assume it was based on the alleged stories printed about him. The Court also points out that not one of these articles or stories was presented by the Plaintiffs, nor was any reason offered to explain the absence of any such proof.

As Plaintiffs presented no direct evidence to establish their claim, and rely only on possibilities and conjecture as to motive and intent, the Court finds that the Defendants did not act in any impermissable manner to discriminate against any of the Plaintiffs in this suit.

There was also a dispute as to whether SERVICES had taken all the steps required of it to secure issuance of a permit before the May 17, 1979 vote of the Commission denying permission for SERVICES to do business. Plaintiffs offered as evidence, receipts, indicating payments made for electric and telephone hook-ups which they asserted were made in reliance on the Commission's preliminary vote on May 8, 1979.

There were certain mandatory requirements as a condition precedent to the issuance of a permit required by the Port Authority which were not submitted by the Plaintiffs. In particular, the permit fee was never paid. The check submitted was returned for insufficient funds and was never made good by the Plaintiffs. The Plaintiffs never presented the required proof of insurance coverage to the Port Authority, but testified that they "had insurance" although no policy was introduced. Based on the testimony and evidence presented at trial, the Court finds that the Plaintiffs never completed the steps required to secure the issuance of the permit to do business to SERVICES.

## CONCLUSIONS OF LAW

A. *The Directed Verdict Standard.*

█ In this case, the Court orally ruled upon the Motion for Directed Verdict made by the Defendants at the close of the Plaintiffs' case in their favor. In deciding on a Motion for Directed Verdict, the Court views the evidence and all logical inferences therefrom in the light most favorable to the non-moving party. *Neff v. Kehoe*, 708 F.2d 639 (11th Cir.1983). In *Neff*, the Eleventh Circuit again stated that the proper standard for deciding on a directed verdict motions is found in the leading case of *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir.1969).

In *Boeing*, the Court held that after considering all of the evidence in the case, and after giving all logical inferences in favor of the non-moving party,

> [i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the [directed verdict] is proper. On the other hand, if there is substantial evidence opposed

... of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the [directed verdict] should be denied...

411 F.2d at 374.

In accordance with this standard of review of the evidence in ruling on the Motion for Directed Verdict, the Court makes the following findings as to each claim:

## B.  *The 42 U.S.C. § 1983 Claims.*

The Plaintiffs have made two claims under 42 U.S.C. § 1983.  The first of these is that the Defendants, in their capacity as Commissioners of the Port Everglades Authority, and therefore acting under the color of state law, impermissibly discriminated against the Plaintiffs by denying SERVICES' application for a permit based solely on the grounds of animosity towards and prejudice against PICA.

The Plaintiffs are in effect claiming that they were denied due process and equal protection because they were singled out by the Defendants, and the SERVICES application was denied based on rumored ties between PICA and organized crime figures.

■ In order to establish the discriminatory application of a statute such as the one involved in this case, a facially neutral plan for awarding permits to do business at Port Everglades, the Plaintiffs must prove intentional or purposeful discrimination on the part of the Defendant Commissioners. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Smith v. Georgia,* 684 F.2d 729 (11th Cir.1982); *Jackson v. Marine Exploration Co., Inc.,* 583 F.2d 1336 (5th Cir.1978).

■ In this case, the Plaintiffs failed to present any evidence in support of the claim that there was purposeful or intentional discrimination against the Plaintiffs.  There was no evidence presented beyond the mere speculation of PICA of any wrongful motivation of the individual Defendants by their vote of May 17, 1979.

Under the statutory scheme controlling the operation of the Port Everglades Authority, Section 2, Chapter 67–1166, Laws of Florida, Acts of 1967, the Commission is given very broad discretion to act, in accordance with controlling objective that their powers be used to serve the best interest of the Port Authority.  In this case, there was no evidence offered which would establish that SERVICES was denied a permit for any reason other than the judgment of the Commission that the best interests of the Port were served by that denial.

■ It is not the role of the Court to reweigh or reconsider the matters leading to the decision of the Port Authority that the issuance of the permit to the Plaintiffs was not in the best interest of the Port Authority.

The second 42 U.S.C. § 1983 claim made by the Plaintiffs is that they were denied their property without due process of law, in that SERVICES' permit to do business at the Port was revoked without adequate notice and an opportunity to be heard on the issue.  In response to this claim, the Defendants maintain that the Plaintiffs never acquired a property right in the permit despite the initial favorable vote of the Commission on May 8, 1979.

■ It is well established Constitutional law that before a property interest can be taken from an individual or a legal entity by Government action, that individual or entity is entitled to adequate notice and a fair hearing.  *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  However, in this case, there is a dispute as to whether the Plaintiffs ever had any property right affected by the decisions of the Commission.

The seminal case discussing what constitutes a property right was *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  In *Roth,* the Supreme Court held:

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must

have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it... Property interests ... are created and their dimensions are defined by existing rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 578, 92 S.Ct. at 2709.

█ In determining whether or not the Plaintiffs had a property right in this case, it is clear that the Court must look to the statute detailing the power to issue permits by the Port Authority. In relevant part, Section 2, Chapter 67–1116, Laws of Florida, Acts of 1967, reads:

[t]he port commission may *issue* such permit to do business upon finding the *granting* of such permit to be in the best interest of the port authority; provided, however, the port commission may limit the number of refuse to grant permits ... where ... the lack of demand for services ... form[s] the basis for a finding by the port commission that such action is in the best interest of the port authority.

It shall be unlawful ... to solicit or engage in business ... on or over property owned by port everglades authority without first having applied for and being *issued* a permit from the port commission for that purpose. (emphasis supplied)

Reading this statutory provision to give effect to all of its terms, including its use of "issue" and "granting" as describing different stages in the permitting procedure, it is clear that the acquisition of a permit requires more than a vote of the Commission granting approval. It is also clear that the privilege to do business at the Port hinges on the *issuance* of the permit, not merely on the vote approving the permit.

It has been established in this case that after approval by the Commission, the applicant still must satisfy other requirements to be entitled to have a permit issued. Testimony at trial established that at the least, the Plaintiffs failed both to pay the fees required, and to present proof of proper insurance coverage, such as would have allowed the permit to issue to SERVICES.[1]

Looking at all the facts as applied to the two-step permitting system established by the Legislature, it is apparent that the Plaintiffs never completed all the steps necessary to entitle them to the issuance of a permit. It is also apparent that the Legislature intended for the privilege to be bestowed on an applicant only upon a permit being issued. Until complying with all the statutory requirements to have a permit issue, an applicant has only a mere expectancy, a hope that he will be able to complete the requirements and earn his permit before said permission is altered or revoked.

█ Because SERVICES was not entitled to have a permit issued to it, the Plaintiffs never held any property right in the expectancy of receiving the permit, and therefore, they were not denied due process when the Commission changed its vote and decided not to grant SERVICES permission to do business in the Port.

## C. *The Defamation Claim*

The Plaintiffs have also alleged a pendent state law claim, that the Defendants defamed the Plaintiffs through newspaper articles that appeared allegedly as a result of the May 17, 1979 vote of the Commission, reversing their decision on SERVICES' permit application. Plaintiffs' claim is that the Defendants acted with the knowledge that those actions would cause untrue and scandalous articles to be written about the Plaintiffs.

---

1. The denial of a writ of mandamus sought by Plaintiffs to compel the Commission to issue the permit, in Case No. 79–11019, *Pica Services, Inc. v. Jack C. Behringer, et al.,* in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, makes it apparent that the Plaintiffs had not taken the steps necessary to absolutely entitle SERVICES to the permit in issue.

Since this defamation claim is ancillary to the claims made under 42 U.S.C. § 1983, it is governed by reference to the applicable state law. As the defamations were allegedly published in Florida, it is Florida law which controls. *Diplomat Electric v. Westinghouse Electric Supply Company*, 378 F.2d 377 (5th Cir.1967). In Florida, defamation is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another". *Wolfson v. Kirk*, 273 So.2d 774, 776 (4th D.C.A.1973), *cert. denied* 279 So.2d 32 (1973). In the case at bar the Plaintiffs are private persons and it is required that they prove some negligence on the part of the Defendants in publishing the defamatory statements. *Tribune Company v. Levin*, 426 So.2d 45 (2nd DCA 1982); *Miami Herald Publishing Co. v. Ane*, 423 So.2d 376 (3rd DCA 1982).

In this case, the Plaintiffs failed to prove any of the elements of a defamation. The Plaintiffs did not introduce into evidence any of the allegedly defamatory articles, nor did they offer any other proof of the contents of the articles. Plaintiffs also failed to prove that the language was defamatory, that it was defamatory about the Plaintiffs, and most importantly, the Plaintiffs failed to prove that these Defendants had anything whatsoever to do with the authorship and/or the publication of these allegedly defamatory articles.

## CONCLUSION

Reviewing all the evidence presented at trial, and the depositions offered into evidence, and viewing all logical inferences therefrom in the light most favorable to the Plaintiffs, the non-moving parties, the Court concludes that the Plaintiffs failed to carry their burden of proof as to any of the claims alleged in the Complaint. Accordingly, it is

ORDERED AND ADJUDGED that FINAL JUDGMENT be and the same is hereby entered in favor of the Defendants and against the Plaintiffs as to all the claims, with the Plaintiffs to take nothing by this action. The Court reserves jurisdiction for the assessment of appropriate costs.