SUNDERHAUS v. BD. OF ADJUSTMENT OF BILTMORE FOREST

[94 N.C. App. 324 (1989)]

EARL SUNDERHAUS AND WIFE, MARDENE D. SUNDERHAUS v. BOARD OF ADJUSTMENT OF THE TOWN OF BILTMORE FOREST, AND THE TOWN OF BILTMORE FOREST

No. 8828SC1139

(Filed 20 June 1989)

1. **Municipal Corporations § 30.17— satellite dish—substantial installation work performed before ordinance enacted**

The trial court properly determined that plaintiffs had performed substantial work on the installation of a satellite dish by the time of enactment of a city zoning ordinance so as to exempt them from its requirements where plaintiffs had dug a trench and laid PVC pipe, thus expending a significant amount of the labor required to install the dish.

2. **Municipal Corporations § 30.8— installation of satellite dish— usual domestic use of residential property—no violation of ordinance**

The trial court properly concluded that plaintiff's satellite dish did not violate a city's zoning ordinance of 1942, since the ordinance required a permit for accessory uses but not the usual private and domestic uses of residential property, and the erection of a satellite dish for the reception of television signals is consistent with the usual domestic uses which homeowners make of their property.

APPEAL by defendants from *Claude S. Sitton, Judge.* Judgment entered 19 July 1988 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 20 April 1989.

*Long, Parker, Hunt, Payne & Warren, P.A., by Ronald K. Payne, for plaintiff-appellees.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by O. E. Starnes and Michelle Rippon, for defendant-appellants.*

BECTON, Judge.

Defendants, the Town of Biltmore Forest and its Board of Adjustment, appeal from a judgment vacating the Board's order that plaintiffs, Earl and Mardene Sunderhaus, remove a satellite-dish television antenna from the yard area of their home. We affirm.

SUNDERHAUS v. BD. OF ADJUSTMENT OF BILTMORE FOREST

[94 N.C. App. 324 (1989)]

Earl and Mardene Sunderhaus reside in the Town of Biltmore Forest (the Town). Their home is located in a Residence A District, a district zoned for single-family dwellings. Sometime prior to 18 October 1983, a trench was dug in the Sunderhauses' yard, and PVC pipe was placed in the trench. This work was done as part of the installation of a satellite-dish television antenna.

On 18 October 1983, the Town enacted a new zoning ordinance. Among other things, the ordinance said that "[n]o building or other structure shall be erected . . . until a certificate of zoning compliance shall have been issued by the Zoning Administrator." The ordinance defined a "structure" as "[a]nything constructed or erected, including but not limited to buildings, which requires location on the land or attachment to something having permanent location on the land."

During December 1983, plaintiffs finished erecting the satellite dish. This dish is a round, concave piece of sheet metal, nine feet in diameter. It is joined to an iron pipe, and the pipe is planted in a concrete bed two feet in diameter. An antenna wire, running through the PVC pipe, connects the dish to the house.

In February 1984, Robert Musselwhite, the Town's Zoning Administrator, wrote plaintiffs a letter telling them that the 1983 ordinance required the removal of their dish. The Sunderhauses appealed to the Board of Adjustment. At its meeting on 13 March 1984, the Board affirmed Mr. Musselwhite's decision and ordered plaintiffs to take down the dish.

Plaintiffs next petitioned the superior court for certiorari to review the Board's ruling. Plaintiffs and defendants submitted stipulated findings of fact to the judge. After reviewing these facts, the judge vacated the order of the Board and entered judgment for the Sunderhauses. Defendants appealed.

I

When a superior court reviews, on certiorari, an order of a board of adjustment, the court's function is to review the evidence contained in the record to determine whether the board has committed an error of law. See Lee v. Bd. of Adjustment of Rocky Mount, 226 N.C. 107, 109, 37 S.E. 2d 128, 130 (1946). Our review is of the superior court's conclusions upon those questions of law. See Freewood Assocs., Ltd. v. Davie County Bd. of Adjustment, 28 N.C. App. 717, 719, 222 S.E. 2d 910, 912 (1976), disc. rev. denied

*and appeal dismissed,* 290 N.C. 94, 225 S.E. 2d 323 (1976) (citing *In re Application of Campsites Unlimited, Inc.,* 287 N.C. 493, 498, 215 S.E. 2d 73, 76 (1975)).

The judge ruled that "the only effective ordinance governing the installation of the satellite dish is [a] 1942 ordinance of the Town," and that the Sunderhauses' dish did not violate that ordinance. The judge held the 1983 ordinance inapplicable on the ground that the Sunderhauses had completed "substantial work" toward the installation of their dish prior to the enactment of the 1983 ordinance.

The judge's conclusions present the two issues we consider on appeal. Our first inquiry is whether the judge correctly ruled that the Sunderhauses had performed substantial work by 18 October 1983, so as to exempt them from the requirements of the new ordinance. We next examine whether plaintiffs could put up a satellite dish consistent with the provisions of the 1942 ordinance.

A

[1]  In cases involving building permits, North Carolina courts have held that the mere issuance of a permit does not create a vested right to build contrary to the provisions of a subsequently enacted zoning ordinance. *E.g., Keiger v. Winston-Salem Bd. of Adjustment,* 281 N.C. 715, 719, 190 S.E. 2d 175, 178 (1972). If, however, the permittee, in good faith reliance upon the lawfully-issued permit, has commenced building, or has incurred substantial expenditures or contractual obligations in preparation for building, the permittee acquires a right to proceed with the construction. *See id.; Warner v. W. & O., Inc.,* 263 N.C. 37, 41, 138 S.E. 2d 782, 785 (1964); *Town of Hillsborough v. Smith,* 276 N.C. 48, 55, 170 S.E. 2d 904, 909 (1969); *see also Campsites,* 287 N.C. at 500-01, 215 S.E. 2d at 77. In *Campsites,* our Supreme Court held that a party may acquire a right to build without a permit if the good faith expenditures are made at a time when no permit is required. 287 N.C. at 501, 215 S.E. 2d at 78 (building-permit cases declared law applicable to "present case"). Likewise, a substantial expenditure or the commencement of building at a time when one zoning ordinance is in effect will serve to make the provisions of that ordinance applicable to the builder, notwithstanding the enactment of new regulations prior to the completion of the project.

To acquire a right to carry on construction, a property owner must make a substantial beginning toward the end result of the

project. *See* 82 Am. Jur. 2d *Zoning and Planning* Sec. 186 (1976); *Town of Hillsborough*, 276 N.C. at 54, 170 S.E. 2d at 909. When courts are called upon to consider what constitutes substantial work, the construction projects at issue are typically more ambitious than is the one involved here. We find no clear guidance from other cases to help us assess whether the excavation of a trench and the laying of PVC pipe is a "substantial" beginning toward the erection of a satellite dish. When a *building* is partially or fully constructed before the zoning changes take effect, courts have consistently held the new zoning regulations inapplicable. Annotation, *Retroactive Effect of Zoning Regulation, in Absence of Saving Clause, On Validly Issued Building Permit*, 49 A.L.R. 3d 13, 22 (1973). When only preliminary construction has been performed by the time of the new regulations, case results are more problematic. *See id.* and cases cited. Some courts have held that the builder has a right to proceed with the construction, while others hold that the new ordinance prevails. *Id.*

When we consider the relatively small scale of the project involved here, we hold that the trial judge correctly ruled that plaintiffs had completed substantial work toward the installation of their dish. A significant amount of the labor needed to install the dish was accomplished by the digging of the cable trench and by the laying of the PVC pipe. Therefore, the permissibility of this use of plaintiff's yard is determinable under the 1942 regulations.

B

[2] Defendants argue that the Sunderhauses violated the 1942 ordinance by erecting the dish. Article VII, Section 3 of that ordinance says this:

> No main or *accessory building or structure of any nature* may be erected *until* an application in writing has been made, the plans and specifications for such building or structure, in such detail as may be required by the Board of Adjustment, submitted to said Board, and a building permit therefor issued by said Board.

(Emphasis added.) Article II of the ordinance defines "[a]ccessory building or accessory use" as "a building or use subordinate to the main building or use and maintained for purposes customarily incidental to those of the main building." Defendants contend that "[u]nder this broad definition, a satellite dish would be included as

an 'accessory use.' " They also argue that the dish is a "structure" as specified in Article VII. Consequently, defendants claim, the 1942 ordinance required the Sunderhauses to obtain a permit from the Board prior to installing the dish.

The trial judge, however, concluded that "the satellite dish does not constitute a building or use as that term is used in the 1942 ordinance." In our view, the judge's conclusion is correct.

Article IV of the ordinance grants the following exemption to the permit requirement of Article VII:

### USES IN RESIDENCE DISTRICTS

Section 1. *Uses permitted and for which special permission is not required.* In the Residence A, A-1 and A-2 Districts, no new building or structure, and no alteration, enlargement or extension of any existing building or structure, shall be designed, arranged or constructed, and no land, building or structure or any part thereof, shall be used except for the following purpose:

. . .

(b) Except as hereinafter otherwise provided, the usual private and domestic outbuildings and uses . . .

Construing Articles IV and VII together, the import of the 1942 ordinance is clear: accessory uses require permission of the Board; "the usual private and domestic . . . uses" of residential property, however, do not necessitate a permit. Perforce, the judge's conclusion that the satellite dish constituted neither a "building or use," as those terms are used in the ordinance, was a conclusion that the Sunderhauses had engaged in a "usual private and domestic . . . use" of their property.

Our courts have long recognized that "[a] zoning ordinance . . . is in derogation of the right of private property and provisions therein granting exemptions or permissions are to be liberally construed in favor of freedom of use." *In re Application of Rea Constr. Co.*, 272 N.C. 715, 718, 158 S.E. 2d 887, 890 (1968) (citation omitted). We agree with plaintiffs that "[i]n today's society the reception of television signals is a general and expected use of residential property." Whether a satellite dish is, in fact, a "structure" is not, we think, of critical importance. Article VII's prohibition of the erection, without Board permission, of "accessory building[s]

or structure[s] *of any nature*" (emphasis added) cannot mean that a permit is needed to put up *any and all* accessory structures, since Article IV plainly exempts "outbuildings" from the permit requirement.

When we construe the language of Article IV in a manner favoring the free use of private property, we hold that the exemptions delineated in that Article are broad enough to allow for the erection of a satellite-dish television receiver. Such use of a residential property is, in our view, consistent with the usual domestic uses that homeowners make of their property, i.e., the enjoyment of television in one's home. As with any other legislative enactment, "[a] zoning ordinance . . . must be construed so as to ascertain and effectuate the intent of the legislative body that adopted the ordinance." *Id.* (citation omitted). Article IV's allowances for the usual private and domestic pursuits of home ownership do not permit us to say that a satellite dish runs counter to "the original intent of the body" that enacted the ordinance. *Farr v. Bd. of Adjustment of Rocky Mount*, 318 N.C. 493, 498, 349 S.E. 2d 576, 579 (1986).

We hold, therefore, that the judge properly concluded that the Sunderhauses' dish antenna did not violate the Town's ordinance of 1942.

## II

For the reasons we have stated above, the judgment of the trial court is

Affirmed.

Judges JOHNSON and ORR concur.