**NELLO L. TEER COMPANY**

v.

**ORANGE COUNTY, Shirley E. Marshall, Don Willhoit, and Moses Carey, Jr.**

No. C–89–288–D.

United States District Court,
M.D. North Carolina,
Durham Division.

Sept. 9, 1992.

Charles B. Nye, Charles H. Nye, Durham, NC, H. Wayne Phears, Norcross, GA, for plaintiff.

Michael B. Brough, G. Nicholas Herman, Chapel Hill, NC, Douglas Hargrave, Hillsborough, NC, Frayda S. Bluestein, Robert Erwin Hagemann, Chapel Hill, NC, for defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

Defendants Orange County, Shirley E. Marshall, Don Willhoit, and Moses Carey, Jr. move for summary judgment against Plaintiff Nello L. Teer Co. (Teer). The latter three defendants were members of the Orange County Board of Commissioners during the period in dispute here.

Teer asserts that Defendants had no authority to adopt a moratorium under North Carolina law; moreover, that it was invalid because it was adopted without notice; that notice of the proposed zoning amendments was defective and thus they were invalid; that Teer acquired vested rights to use its property as permitted in the zoning ordinance in effect prior to April 1, 1985; and that Teer was denied due process and equal protection by virtue of Defendants' actions. Plaintiff seeks declaratory and injunctive relief, and damages of $5,000,000.

The Defendants' motion for summary judgement is GRANTED. All Plaintiff's claims except those relating to constitutional torts are DISMISSED as untimely. Plaintiff's claims under 42 U.S.C. § 1983 are, DISMISSED for lack of a cognizable property interest. The court declines to exercise jurisdiction over the remaining state constitutional tort claims and they too are DISMISSED.

### I.

A motion for summary judgment should be granted when, after reviewing all of the record, there is no genuine issue of material fact so that the case may be decided as a matter of law. Fed.R.Civ.P. 56. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow that party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Teer will withstand a summary judgment motion if it can forecast sufficient admissible evidence as would withstand a trial

motion for judgment as a matter of law. Fed.R.Civ.P. 50; *see Herold v. HAJOCA Corp.*, 864 F.2d 317, 319 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989).

The forecast of evidence from the affidavits is that Teer is a construction company which mines and sells crushed stone. It had an option to buy 146 acres (the "Shearin tract") located at the intersection of New Hope Church Road and the Interstate 40 (I–40) right-of-way in Orange County. Teer intended to develop the land into a crushed stone quarry.

Commercially minable quantities of rock were discovered, so Teer purchased the tract on January 20, 1984 for $440,730. On June 18, 1984, Plaintiff acquired a lease option on an additional 58 acres (the "Bingham tract") along the northern boundary of the Shearin tract. There, minable quantities of rock were also discovered. When Plaintiff purchased the Shearin tract, it was zoned R–1. Under the county zoning ordinance then in effect, quarry mining was permitted on R–1 property if a Class A special use permit was obtained. When Teer acquired the lease option on the Bingham tract, it was also zoned R–1. Teer has drilled holes and cut drill grids on both properties.

In late 1984, Teer hired Ragsdale Consultants, professional consulting engineers, to complete a set of mining plans for the New Hope site. A complete set of design and construction documents was finished in early 1985. Teer spent approximately $40,-000 total. Teer cut down some trees to allow access for the drilling rigs, but has never constructed any structures on its property, nor entered into any contracts for rock quarried from the property.

On January 22, 1985, Susan Smith (Smith) of the county planning staff sent Marvin Collins (Collins), the Director of the Orange County Planning Department, a memorandum listing possible amendments to the zoning ordinance provisions applicable to extractive uses. Smith's recommendations did not delete mining as a permitted use on R–1 property such as Teer possessed.

Collins agreed with Smith's recommendations and had her prepare proposed ordinance amendments based upon them. On February 4, the Orange County Board of Commissioners met with Don Willhoit, Shirley Marshall, Ben Lloyd, and Moses Carey present; Norman Walker was absent. Collins reviewed Smith's proposed amendments to the extractive uses provisions.

Commissioner Carey asked whether any special use permit applications had been filed or were pending; none were. The Board passed this moratorium resolution:

WHEREAS, the Board of County Commissioners of Orange County will be considering amendments to the Orange County Zoning Ordinance which address the provisions of Article 4 *Permitted Use Table* and Article 8 *Special Use Permits* which apply to the issuance of Class A special use permits for extractive uses;

. . . .

NOW, THEREFORE BE IT RESOLVED that the Orange County Board of Commissioners will not accept special use permit applications for extractive uses until after June 1, 1985 in order that the proposed amendments can be acted upon.

The Board also approved a legal advertisement, later published on February 13 and 20, 1985 in the *News of Orange County, Chapel Hill Newspaper,* and *Durham Morning Herald,* which stated:

[N]otice is hereby given that a public hearing will be held ... for the purpose of giving all interested citizens an opportunity to speak for or against the adoption of proposed amendments to the Orange County Zoning Ordinance, Zoning Atlas and Subdivision Regulations.

The amendments under consideration are as follows:

**6. ZONING ORDINANCE TEXT AMENDMENTS**

c. Amend § 4.3 **Permitted Use Table** to prohibit extractive uses as permitted uses requiring a Class A Special Use Permit in the following zoning districts: Residential–3 through Residential–13, Local Commercial–1, Neighborhood Commercial–II, Community Commercial–III,

General Commercial–IV, Office–Institutional. The amendment may limit the zoning districts in which extractive uses are permitted with a Class A Special Use Permit to Industrial–I, Industrial–II, Industrial–III, Agricultural–Residential and Residential–I. Extractive uses are currently permitted in all Residential and Industrial zoning districts and in the General–Commercial–IV zoning district.

d. Amend § 8.8.1 **Extraction of Earth Product (Class A Special Use)** as follows:

1. Amend § 8.8.1 **Additional Information** by adding additional informational requirements for the site plan, operations plan and rehabilitation plan. The additional information would allow for comprehensive analysis and evaluation of the proposal.

2. Amend § 8.8.1.2 Standards of Evaluation by adding additional standards addressing local need; the amount of area under excavation; groundwater impact; buffers and setbacks; operational reports; operational inspections; and abandonment or termination of operation.

3. Standards of evaluation currently in the Ordinance do not address these matters.

All interested citizens are invited to attend the hearing and be heard. Changes may be made in the advertised proposals which reflect debate, objections and discussions at the hearing.

Citizens unable to attend the hearing may express their views by writing to the Orange County Planning Department, 106 East Margaret Lane, Hillsborough, North Carolina 27278. For your concerns to be fully considered, they must be received by the Planning Department prior to the public hearing.

Questions regarding the proposals should be directed to the Orange County Planning Department. Office hours are from 8:00 a.m. to 5:00 p.m. Monday through Friday.

The public hearing, a joint session with the Board of Commissioners and the Planning Board, was rescheduled to March 12, 1985. Smith presented her proposed zoning ordinance amendments pertaining to extractive uses.

On April 1, 1985, the Board of Commissioners met in regular session, with all five commissioners present, to consider the recommendations made by the Planning Board. Commissioner Marshall moved to amend the Article 4 Permitted Use Table to allow extractive uses (with a special use permit) only in A–R and I–I, –II, and –III zones. Marshall's motion was passed, thereby prohibiting extractive uses in all Residential Districts (R–1 through R–13) and in the General Commercial IV zoning district.

Meanwhile, Teer had prepared a rough draft of the special use permit application, photos, and a complete set of engineering plans for a quarry on the Shearin tract. It held these documents for about a month to "fine-tune" them a little more. In late March 1985, one of Teer's geologists, James Sprinkle, arranged to meet Smith and Collins to review a draft special use permit application for a quarry. Sprinkle intended to ask Smith some questions and later return with Teer's final application. Three Teer employees (Sprinkle, the President at the time, and the Vice President of Aggregate at the time) each knew it took three to four months to obtain a special use permit from Orange County.

Smith scheduled the meeting for April 2, 1985. She did not mention the proposed amendments to the zoning ordinances, nor the moratorium resolution against accepting applications for extractive use permits. She has said she scheduled the meeting then so she could see what action the Board would take April 1. At the meeting, Smith told Sprinkle a moratorium prohibited her acceptance of special use permit applications for extractive uses and that zoning ordinance amendments passed the night before had deleted extractive uses in R–1 districts.

Smith explained to Sprinkle that a new land use plan was in the offing and Plaintiff could submit an application for a special use permit at that time. She suggested Teer write to the Planning Department

indicating its desire to have its property designated for industrial use and urged Teer to participate actively in the Plan's forthcoming meetings and hearings.

After their meeting, Sprinkle requested that the Planning Department inform him by telephone and mail when further public hearings would be held. On April 5, 1985, Teer notified Smith that it owned a 146-acre tract of land adjacent to and contiguous with the right-of-way of I–40 at the New Hope Church Road interchange. It requested consideration of a special activity node for industrial uses at that site.

On July 30, 1985, Smith wrote back regarding Plaintiff's request:

[T]he Joint Planning Area Land Use Plan [JPA Plan] which affects this area, initially scheduled for public hearing in September, has been rescheduled for public hearing in December 1985.

This change in schedule does not affect the status of your request which has been forwarded for consideration to Gene Bell, the staffperson for Orange County assigned to the JPA Land Use Plan project.

The JPA Plan did designate the Teer property as an industrial node. On January 14, 1986, Teer wrote to the Planning Director, Collins, concerning the announced "Public Hearing on Draft Land Use Plan" to be held that day. The letter requested that "consideration be given that [Plaintiff's] tracts of land be designated in the Land Use Plan as Industrial Transition Activity Node with an I–2 or I–3 district." Sprinkle attended the hearing, wherein a preliminary draft of the Orange County–Chapel Hill–Carrboro JPA Plan was submitted to a joint session of the Orange County Board of Commissioners, the Chapel Hill Town Council, the Carrboro Board of Aldermen, and the Orange County Planning Board. The commissioners present were Willhoit, Marshall, Carey, and Walker.

On March 18, 1986, the Board of Commissioners met in regular session with all five commissioners present. Willhoit proposed removing the Industrial designation from the New Hope interchange on the existing draft JPA Land Use map. A motion passed to have the Orange County, Chapel Hill, and Carrboro Planning Boards consider the revision. No one from Teer attended the meeting. Ultimately, on January 5, 1987, Plaintiff's land at the New Hope interchange was designated Rural Buffer, rather than Industrial. Rural Buffer does not allow stone quarries.

Sprinkle always understood that the JPA Plan was not final. He kept in close contact with the Planning Department to monitor its progress. Teer has stipulated that no one from Orange County asked it not to appeal the deletion of the industrial node, the adoption of the Rural Buffer, nor the adoption of the JPA Plan. Moreover, no one from Orange County told Teer the county would not raise the defense of the statute of limitations. Teer has never filed a request for a special use permit to date.

Teer filed an action in Orange County Superior Court on October 21, 1987. On April 24, 1989, it dismissed that action and filed this federal action April 27, 1989.

## II.

### A.

■ Defendants have moved for summary judgment on Teer's claims as untimely. Where the pertinent facts are not in conflict and the statute of limitations is properly pleaded, summary judgment is appropriate. *First Investors Corp. v. Citizen's Bank, Inc.,* 757 F.Supp. 687, 689–90 (W.D.N.C.1991), *aff'd.,* 956 F.2d 263 (4th Cir.1992).

■ All actions under 42 U.S.C. § 1983 (§ 1983) are characterized as personal injury tort actions for purposes of the statute of limitations. *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1162 (4th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1997, 118 L.Ed.2d 593 (1992) (three year limitations period for alleged violation of § 1983 by zoning ordinance); *see* N.C.Gen.Stat. § 1–52(5). Since the actions upon which Teer bases its § 1983 claim all occurred within three years of the filing in state court, that claim is not barred by the statute of limitations.

## B.

■ In North Carolina, "an action contesting the validity of any zoning ordinance or amendment thereto adopted by a county" must be brought within nine months. Gen.Stat. § 1–54.1 (1983). The cause of action accrues upon adoption of the ordinance or amendment thereto. Gen.Stat. § 153A–348 (1983). A moratorium affecting land use-falls under the same statute of limitations. *See Vulcan Materials Co. v. Iredell County,* 103 N.C.App. 779, 407 S.E.2d 283, 286 (1991) (concluding that such moratoria are governed by Article 18 of N.C.Gen.Stat.)

■ Here, it is undisputed that the moratorium was adopted February 4, 1985; the amendments deleting extractive uses in R–1 districts were adopted April 1, 1985; and the JPA Plan which left the New Hope interchange designated Rural Buffer was adopted January 5, 1987. Teer's complaint in Orange County Superior Court was filed October 21, 1987. Thus, even if Teer met the provisions of the savings statute (Gen. Stat. § 1A–1, Rule 41), its requests for injunctive and declaratory relief against enforcement of the February 4, 1985 moratorium, the April 1, 1985 amendments, and the January 5, 1987 amendments are untimely. *E.g., Sherrill v. Wrightsville Beach,* 81 N.C.App. 369, 344 S.E.2d 357, 359, *rev. denied,* 318 N.C. 417, 349 S.E.2d 600 (1986); *CAMA Minor Development Permit v. Bath,* 82 N.C.App. 32, 345 S.E.2d 699, 705 (1986).

■ Plaintiff asserts that the state superior court has denied Defendants' statute of limitations argument, and that these decisions are binding on this court as "law of the case." This Court must give a final judgment of a North Carolina state court the same full faith and credit which would be accorded it by other North Carolina courts. 28 U.S.C. § 1738 (1966). A state court's interlocutory orders, however, do not have any res judicata effect in a federal suit. *See Arco v. Travelers Ins. Co.,* 730 F.Supp. 59, 64–65 (W.D.Mich.1989); 46 American Jurisprudence 2d JUDGMENTS § 457 (1969). The denial of motions for summary judgment and for dismissal are interlocutory orders under North Carolina law. *Wilson Heights Church of God v. Autry,* 94 N.C.App. 111, 379 S.E.2d 691, 695 (1989); *Duke University v. Stainback,* 84 N.C.App. 75, 351 S.E.2d 806, 807, *aff'd. on other grnds.,* 320 N.C. 337, 357 S.E.2d 690 (1987). Therefore, this Court is not bound by the Orange County Superior Court's decisions on these motions by Defendants.

## C.

■ Teer also claims that the Defendants are equitably estopped from arguing the statute of limitations. While the statute of limitations is an affirmative defense, Teer bears the burden of establishing any exception to the rule. *Drazan v. U.S.,* 762 F.2d 56, 60 (7th Cir.1985). In the context of limitations, the party sought to be estopped must have:

(1) acted in a manner which amounts to a false representation or concealment of material facts, i.e. conduct which is inconsistent with the party's later assertion of the statute of limitations;

(2) intended that such conduct would be acted upon by the other party; and

(3) known, actually or constructively, the real facts.

The party asserting the estoppel must have:

(1) neither known nor had the means to know the real facts; and

(2) relied upon the conduct sought to be estopped to its prejudice in filing the action.

*Parker v. Thompson–Arthur Paving Co.,* 100 N.C.App. 367, 396 S.E.2d 626, 628–29 (1990).

Teer complains the following conduct prevented it from filing suit: the county's enacting the moratorium without notice to Teer, publishing a public notice which concealed the fact that the commissioners allegedly intended to delete mining as a special use in R–1 districts, concealing the existence of the moratorium from the company although Teer representatives spoke with Smith of the County Planning Staff on three occasions after its adoption, delaying

the meeting with Teer until after the county was scheduled to vote on the proposed amendments, and the actual deletion of mining as a permitted use on Teer's property.

Teer further complains of Smith's conduct during the April 2, 1985 meeting. The company forecasts evidence that she told its geologist Sprinkle she had some "good news" for him: the moratorium on accepting mining applications and the deletion of mining as a permitted use on the property was only a temporary setback because, as part of a joint planning effort, the Planning Board was anticipating that the New Hope interchange would be designated as an industrial activity node. Such a node would allow Teer to quarry on its property. Smith encouraged Teer to be patient and to take an active part in the planning process. Smith suggested Teer request designation of its property as such a node.

■ No reasonable jury could find that any of these acts operated to prevent Teer from bringing its suit on time. First, Teer had actual notice of the moratorium and amendments deleting extractive uses in R–1 districts on April 2, 1985. Yet, the company chose to pursue the possibility of an industrial node on the JPA Plan instead of commencing a suit to challenge either the moratorium or the amendments. In a similar case, *Ocean Acres Ltd. Partnership v. Dare County Bd. of Health*, 707 F.2d 103 (4th Cir.1983), the developer chose to proceed along another path and only later brought suit to challenge the county's actions. The county was not prevented from pleading limitations although the developer claimed it had fraudulently concealed the real motive behind its septic tank ban and overstated both the thoroughness of the investigation preceding the moratorium and the scientific basis of the ban.

■ Furthermore, after it knew any prospect of a quarry on its property had fallen through, Teer still waited over nine months to file suit in Orange County Superior Court. An estoppel is effective only as long as the Plaintiff reasonably relied upon the defendants' representations as an excuse for not instituting an action. *E.g.,*

*Duke University v. St. Paul Mercury Ins. Co.,* 95 N.C.App. 663, 384 S.E.2d 36, 43–44 (1989) (estoppel denied where university waited eleven months after prospect of settlement dimmed to file suit); 51 Am.Jur.2d LIMITATIONS OF ACTIONS § 437.

■ Finally, Smith's conduct could not be interpreted reasonably as a misrepresentation. The amendments she had recommended to the commissioners did not delete mining as a special use in R–1 districts. Although the process was delayed and ultimately the industrial activity node at the New Hope interchange was deleted, no evidence has been offered to suggest that her statements regarding the JPA Plan were not true when made. No reasonable person could understand her statements as assurance that the industrial node *would* be included in the JPA Plan. *Cf., Duke University v. Stainback,* 320 N.C. at 341, 357 S.E.2d 690 (attorney's actions caused hospital to reasonably believe it would receive payment once case against insurance company was concluded). On the contrary, the forecast of evidence is that she specifically encouraged Teer to get involved in the planning process. This information would have put a reasonably diligent, prudent person on notice that the JPA Plan was not yet firm. Neither could a reasonable person think that Smith herself was the decision maker, nor that she could bind the Defendants to a decision regarding the JPA Plan. Teer has not borne its burden of forecasting evidence which demonstrates the elements of equitable estoppel. The Defendants may assert the defense of the statute of limitations.

## D.

■ Plaintiff next asserts that the moratorium, zoning amendments, and JPA Plan are continuing wrongs, and that it should not be time-barred from bringing these claims. The purpose of the continuing wrong doctrine is to avoid multiple actions and to allow aggrieved property owners to assess the full extent of their losses before filing suit. *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947). A continuing

violation is occasioned by continual unlawful acts, not continual ill effects from an original violation. *Ocean Acres,* 707 F.2d at 106. Generally, the doctrine is inapplicable to the zoning context. *New Port Largo, Inc. v. Monroe County,* 706 F.Supp. 1507, 1516–17 (S.D.Fla.1988).

■ Teer has not forecast evidence which demonstrates a continuing wrong. The Defendants' actions and positions have not changed, nor has Plaintiff incurred any additional damages which did not flow from the original implementation of the moratorium, zoning amendments, and JPA Plan. Plaintiff has not been deprived of the use of its property pending court proceedings. *Ocean Acres,* 707 F.2d at 106; *cf. New Port Largo,* 706 F.Supp. at 1517–18 (developer could rely on continuing wrong theory where it contested zoning vigilantly and county continued to take wrongful actions).

### E.

Teer contends that the nine-month statute of limitations under Gen.Stat. § 1–54.1 is unconstitutional because it sets an unreasonably short time period for a litigant to assert constitutional violations, i.e. Teer's right to receive notice of the proposed changes. *See Logan v. Zimmermann Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (120 day period for state commission to convene fact-finding conference unconstitutional where employee not at fault in missing time deadline, his private interests were substantial, deprivation was final, and state's interest was insubstantial).

■ Courts should exercise power to apply and interpret the Constitution with the greatest possible caution. A court will inquire into the constitutionality of a statute only to the extent that a case requires it and to the extent that it is essential to the protection of the rights of the parties concerned. Unconstitutionality will not be considered where a determination of the issue would be futile. 16 Am.Jur.2d CONSTITUTIONAL LAW § 160 (1979).

■ In this case, Teer can not claim that the brevity of the statute of limitations precluded its access to the courts. It had actual knowledge of the April 1, 1985 amendments the day after they were passed and of the moratorium two months after its institution. Teer was involved in the JPA planning process for one year and nine months before it was ultimately set. Plaintiff was aware of Defendants' actions and of the impact of those actions on its proposed quarry. Nonetheless, it waited more than nine months to file suit in superior court even after any hope of favorable zoning was dashed.

The company makes no contention that it either did not know of the statute of limitations for challenging zoning amendments, or that it was unable to learn of the limitations period. *See, Schimmel v. Spillane,* 819 F.2d 477 (4th Cir.1987) (unrepresented by counsel); *Hamilton v. Jeffrey Stone Co.,* 25 Ark.App. 66, 752 S.W.2d 288, 291 (1988) (slow, insidious nature of disease). Therefore, this court will not consider its claim that the nine-month statute of limitations is unconstitutional.

### III.

### A.

■ Teer makes several claims under 42 U.S.C. § 1983: that the Defendants' undue interference with its use of the property destroyed the value of its property and amounted to a taking without just compensation; that the zoning changes were arbitrary and capricious and so denied it substantive due process; that the changes were adopted in a procedurally defective manner; and that the Defendants denied Teer equal protection by treating it differently for a reason not rationally related to a legitimate government purpose. Those who seek damages in a § 1983 land use action have a heavy burden to carry, *Sanfilippo v. County of Santa Cruz,* 415 F.Supp. 1340, 1343 n. 1 (N.D.Cal.1976), especially since zoning ordinances are presumed constitutional. *Goldblatt v. Hempstead,* 369 U.S. 590, 596, 82 S.Ct. 987, 991, 8 L.Ed.2d 130 (1962). First, Teer again asserts that the state superior court has de-

nied Defendants' argument against Teer's vested rights, and that these decisions are binding on this court as "law of the case." As explained above, this Court is not bound by the Orange County Superior Court's earlier decisions.

### B.

◼ Before § 1983 can be invoked, there must be a property interest involved. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it ... [,] more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Patterson v. Portch,* 853 F.2d 1399, 1405 (7th Cir.1988).

◼ State law determines "property" in the land use context. *E.g., Scott v. Greenville County,* 716 F.2d 1409, 1417–18 (4th Cir.1983); *Mays–Ott Co., Inc. v. Town of Nags Head,* 751 F.Supp. 82 (E.D.N.C.1990). The company relies upon *Application of Campsites Unlimited, Inc.,* 287 N.C. 493, 215 S.E.2d 73 (1975) (non-conforming use exempted from newly-established permit requirement); *Sunderhaus v. Bd. of Adjustment,* 94 N.C.App. 324, 380 S.E.2d 132 (1989) (exemption from newly-established permit requirement); and *Godfrey v. Zoning Bd. of Adjustment,* 317 N.C. 51, 344 S.E.2d 272, 279 (1986) (non-conforming use established where issued permit was relied upon) for its argument that it has a vested right to mine the property because of its good faith in making substantial expenditures in reliance upon the existing zoning.

◼ It is true that reasonable investment-backed expectations of the landowner can create property interests protected by the federal Constitution. *Penn Central Transportation Co. v. New York,* 438 U.S. 104, 124–25, 98 S.Ct. 2646, 2659–60, 57 L.Ed.2d 631 (1978) ("while the challenged government action caused economic harm, it did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute

'property' "); *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 189, 105 S.Ct. 3108, 3118, 87 L.Ed.2d 126 (1985). However, the federal Constitution can not protect unilaterally re-defined property rights or limit governmental prerogatives on the basis of a landowner's purely subjective acts, declarations, or expectations.

Investment-backed expectations thus are reasonable only when they comport with settled state property law. *See Bd. of Regents,* 408 U.S. at 577–78, 92 S.Ct. at 2709–10; *e.g., Ruckelshaus v. Monsanto Co.* 467 U.S. 986, 988, 104 S.Ct. 2862, 2865, 81 L.Ed.2d 815 (1984). Such expectations are not reasonable where they are made with knowledge of existing state law which limits permissible uses. *E.g., Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.1982), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (rejection of housing development: no deprivation of property); *Dean Tarry Corp. v. Friedlander,* 826 F.2d 210 (2d Cir.1987) (no property right in having site development plan adopted); *Furey v. Sacramento,* 592 F.Supp. 463 (E.D.Cal.1984) (owner who unilaterally improved land not deprived of property when zoning authority did not rezone land in manner which allowed him profit).

◼ Any sophisticated construction company, such as Teer, which buys or leases land for possible development in an urbanizing area, such as Orange County, must be deemed to do so with the knowledge that local governments may adopt or amend zoning regulations at any time. Teer's forecast of evidence demonstrates it knew it could not quarry without a special use permit; it knew the process could take up to four months and that there was no guarantee a special use permit ever would be granted.

North Carolina has adopted a test for vested rights which became effective October 1, 1991. Gen.Stat. § 153A–344.1. Although it does not exclude commonlaw definitions, it does indicate the actions the state anticipates would create vested

rights. In comparison, Teer had not finalized its application and has never applied for a special use permit to date.

■ Even assuming Teer had reasonable investment-backed expectations sufficient to vest it with a property interest in the current zoning regulations, at most it was vested with the right to apply for a special use permit. In North Carolina, whether and how to amend zoning ordinances, as well as the conditions, procedures and granting of special use permits are left to the discretion of county boards of commissioners. Gen.Stat. §§ 153A–340, 343–44. The denial of a discretionary permit does not create liability under the federal Constitution because the applicant has no property right at stake, but merely an expectation. *E.g., Spence v. Zimmermann*, 873 F.2d 256, 258 (11th Cir.1989); *RRI Realty Corp. v. Incorporated Village of Southhampton*, 870 F.2d 911, 918 (2d Cir.), *cert. denied*, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Doran v. Houle*, 721 F.2d 1182, 1185 (9th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2152, 80 L.Ed.2d 538 (1984); *United Land Corp. v. Clarke*, 613 F.2d 497, 501 (4th Cir.1980); *Pica Services Inc. v. Behringer*, 593 F.Supp. 113, 115–16 (S.D.Fla.1984) (since all required steps to get permit not completed, no property right); *see also Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (when benefit discretionary, then no property interest).

### IV.

North Carolina permits suits for alleged violations of state constitutional rights. *Corum v. U.N.C. Bd. of Governors*, 330 N.C. 761, 413 S.E.2d 276 (1992) (freedom of speech). However, since all the other claims have been dismissed, this Court declines to exercise jurisdiction over these state claims. 28 U.S.C. § 1367(c)(3).

### V.

To summarize, the Defendants' motion for summary judgement is GRANTED. All Plaintiff's claims except those relating to constitutional torts are DISMISSED as untimely. Plaintiff's claims under 42 U.S.C. § 1983 are DISMISSED for lack of a cognizable property-interest. The Court declines to exercise jurisdiction over the remaining state constitutional tort claims and they too are DISMISSED.