**Steve BRYAN, Plaintiff,**

v.

**CITY OF MADISON, MISSISSIPPI, et al., Defendants.**

**No. Civ.A. 3:97–CV–73WS.**

United States District Court, S.D. Mississippi, Jackson Division.

March 31, 1999.

Affirmed, 213 F.3d 267.

Joel W. Howell, III, Joel W. Howell, III, Steven H. Smith, Steven H. Smith, PLLC, Jackson, MS, for Plaintiff.

John Hedglin, Stephen W. Rimmer, Rimmer, Rawlings, Macinnis & Hedglin, P.A., Madison, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the plaintiff Steve Bryan (hereinafter "plaintiff") for partial summary judgment on the issue of liability brought pursuant to Rule 56(a) [1] of the Federal Rules of Civil Procedure. The plaintiff, a real estate developer seeking to construct an apartment complex on a tract of property zoned for that purpose, but owned by another individual, brings this cause of action pursuant to Title 42 U.S.C. §§ 1983 [2] and 1985 [3] against the City of Madison, Mayor Mary Hawkins (hereinafter the "Mayor"), Alderman Tim Johnson, and Alderman Lisa Clingan–Smith (hereinafter referred to collectively as the "Aldermen"), claiming that his civil rights were violated when he was not granted a permit by the Mayor and Board of Aldermen to proceed with the construction of a multi-family dwelling complex in the City of Madison, Mississippi.

Also before the court is the defendants' motion for summary judgment pursuant to

1. Rule 56(a) of the Federal Rules of Civil Procedure provides that "[a] party seeking to recover upon a claim, counter-claim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

Additionally, Rule 56(c) provides in pertinent part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

2. Title 42 U.S.C. § 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

3. Title 42 U.S.C. § 1985(3) provides in pertinent part that "[i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons ... the equal protection of the laws; ...; or to injure any citizen in person or property ...; in any case of conspiracy set forth in this section, if one or more person engaged therein do, or cause to be done any act in furtherance of the object of such conspiracy whereby another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages...."

Rule 56(b).[4] This motion seeks summary judgment on behalf of the individual defendants, Mayor Mary Hawkins, Alderman Tim Johnson, and Alderman Lisa Clingan–Smith, claiming that they are entitled to legislative immunity in their respective individual capacities from the plaintiff's claims. On behalf of the City of Madison, the defendants' summary judgment motion argues that the property owner (who is not the plaintiff) has not been deprived of every economically viable use of his land in the instant case; that there has been no "taking" of the owner's property requiring compensation; that denial of a discretionary permit does not constitute a "taking" under the Fifth Amendment; that no due process or equal protection violations have occurred; and that no civil conspiracy has been perpetrated by the City of Madison.

This court has jurisdiction over this matter pursuant to Title 28 U.S.C. §§ 1343(a)[5] and 28 U.S.C. § 1331[6] (federal question).

## I. PERTINENT FACTS

The plaintiff, a real estate developer, filed for the issuance of a building permit from the City of Madison, Mississippi, on March 18, 1994, seeking to construct an apartment complex on a tract of property zoned for that purpose, but actually owned by another individual. After initial approval of the building permit by the Madison Board of Aldermen, followed by the Mayor's veto of the Board's approval, the plaintiff appealed to the Circuit Court of Madison County, Mississippi, pursuant to Mississippi Code Annotated § 11–51–75 which provides for appeal from the decisions of boards of supervisors and municipal authorities by presenting a bill of exceptions setting forth the basis for appeal. The Honorable Circuit Judge John B. Toney found on March 23, 1995, that Mayor Hawkins possessed broad veto power pursuant to Mississippi Code Annotated § 21–3–15[7] and had been entitled to enter her veto. Judge Toney also held, however, that the Mayor unreasonably had based her veto in part on the unsupported contention that the plaintiff had agreed to provide the City of Madison a forty-foot buffer between the apartment complex and the street without any expectation of compensation. Judge Toney further held that subdivision regulations did not apply to the plaintiff, but that the plaintiff was required to submit a staging plan in accordance with the City's ordinance; that the plaintiff would not be required to present an impact study on increased traffic; that the

4. Rule 56(b) of the Federal Rules of Civil Procedure provides that "[a] party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

5. Title 28 U.S.C. § 1343(a)(3) provides:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

6. Title 28 U.S.C. § 1331 provides:

The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States.

7. MCA § 21–3–15 provides in part that "[o]rdinances adopted by the board of aldermen shall be submitted to the mayor. The mayor shall, within ten (10) days after receiving any ordinance, either approve the ordinance by affixing his signature thereto, or return it to the board of aldermen by delivering it to the municipal clerk together with a written statement setting forth his objections thereto or to any item or part thereof. No ordinance or any item or part thereof shall take effect without the mayor's approval, unless the mayor fails to return an ordinance to the board of aldermen prior to the next meeting of the board, but no later than fifteen (15) days after it has been presented to him, or unless the board of aldermen, upon reconsideration thereof on or after the third day following its return by the mayor, shall, by a vote of two-thirds (⅔) of the members of the board, resolve to override the mayor's veto."

requirement of a single centralized water meter for the entire apartment complex was arbitrary, capricious and unreasonable; and that failure of the record title owner to update his site plat from the one that had been drafted in 1919 could not be held against the plaintiff since he was not the title owner of the property. The case was remanded to the City of Madison for further proceedings in accordance with Judge Toney's Memorandum Opinion and Order. On the plaintiff's motion for reconsideration, Judge Toney also found on April 26, 1995, that the plaintiff would not be required to apply for a dimensional variance.

Mayor Hawkins continued to veto the plaintiff's site plan on various grounds, thereby causing the plaintiff to file additional bills of exceptions. Thereafter, on February 7, 1996, Judge Toney filed two opinions designed to bring the entire matter to a close.

In his first Memorandum Opinion and Order, Judge Toney found that the City's thirty-five foot height restriction was applied to the plaintiff's plan arbitrarily and that the City could not withhold a building permit on that basis. Judge Toney also found that the Mayor's last-minute effort to re-zone the property for uses other than for multi-family dwellings was illegal.

In his second Memorandum Opinion and Order also dated February 7, 1996, Judge Toney declared the plaintiff's development plan to be in compliance with all of the City of Madison's ordinances and directed the City of Madison to issue the plaintiff a building permit. Judge Toney also imposed sanctions on the City of Madison for its repeated attempts to block the plaintiff from obtaining a building permit. The way appeared to be cleared for the plaintiff to proceed with the proposed apartment complex; however, unforeseen circumstances, rather than Judge Toney's opinions, brought this matter to a close when the owner of the property on which the plaintiff proposed to construct the apartment complex sold the property to a third party. The third-party purchaser had another purpose in mind for the property and withdrew the plan to develop the apartment complex. Consequently, and subsequent to the two Memorandum Opinions and Orders issued by Judge Toney on February 7, 1996, the City of Madison moved to dismiss the plaintiff's appeals as moot because the property in question no longer was available for development. This turn of events obviated Judge Toney's directive that the City of Madison process and approve the plaintiff's request for a building permit. The plaintiff's several appeals to the Circuit Court of Madison County, Mississippi, were dismissed later by Judge Toney without prejudice as moot. Nevertheless, aggrieved that the delays promulgated by the City of Madison and its officials had ultimately denied the plaintiff a legitimate opportunity to construct the proposed apartment complex, the plaintiff brought this action, asserting constitutional violations and state tort claims.

## II. THE ISSUES

The complaint filed by the plaintiff asserts that the City of Madison, the Mayor, and the Aldermen all committed constitutional violations against the plaintiff Steve Bryan, when on March 18, 1994,[8] he had filed for approval of a site plan and for issuance of a building permit from the City of Madison, Mississippi. The plaintiff asserts that his rights to substantive and procedural due process were denied; that his "property" was "taken" without payment of just compensation; that he was denied equal protection of the law; that

---

8. The plaintiff submitted a site plan and a request for a building permit on October 23, 1991. According to the plaintiff, the City of Madison approved the site plan and reported that a building permit would be issued upon payment of fees. The City of Madison later passed an ordinance reducing the number of units per acre which could be constructed in any apartment complex. The plaintiff, acting in compliance with the new ordinance, submitted a new site plan and request for a building permit on March 18, 1994.

the defendants interfered tortiously with the plaintiff's business contract with the property owner to build the apartment complex; that the Mayor, the Aldermen, and others engaged in a civil conspiracy pursuant to Title 42 U.S.C. § 1985; and that the Mayor and Aldermen are liable to the plaintiff pursuant to Title 42 U.S.C. § 1986 for neglecting their duty to stop the conspiracy.

The plaintiff's complaint also asks this court to find that the Mayor and Aldermen acted in an arbitrary, capricious, unreasonable and/or discriminatory manner in reviewing, processing, and acting upon the requested building permit. To this end, the plaintiff's complaint asks this court to give preclusive or collateral estoppel effect to the opinions issued by the Circuit Court of Madison County, Mississippi, sitting in its appellate capacity under Mississippi Code Annotated § 11–51–75 [9] in review of the actions taken by the Mayor and Board of Aldermen of the City of Madison. The plaintiff argues that the Circuit Court's decisions are entitled to full faith and credit pursuant to Title 28 U.S.C. § 1738.[10] The plaintiff concludes by asking this court to grant summary judgment to him on the issue of the defendant's liability, and to hold a separate hearing on the matter of damages.

The defendants also seek summary judgment, claiming that the individual defendants, Mayor Mary Hawkins, Alderman Tim Johnson, and Alderman Lisa Clingan–Smith are entitled to legislative immunity in their respective individual capacities from the plaintiff's claims. Further, the City of Madison, the Mayor, and the Aldermen claim that the City of Madison and its officials did not act arbitrarily and capriciously when they raised several debatable issues with regard to the plaintiff's March 18, 1994, site plan and request for issuance of a building permit. These contested issues, say defendants, included the placement of water meters; the thirty-five foot height limitation; the failure to provide a subdivision plat; and the impact of additional traffic on State Highway 463. The defendants argue that the opinions and orders issued by the Circuit Court of Madison County, Mississippi, should not be given preclusive effect in the instant case; that the plaintiff's motion for partial summary judgment on the issue of liability should be denied; that the Mayor and Aldermen should be dismissed in both their official and individual capacities; and that summary judgment should be granted in favor of the City of Madison.

### III. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish that there

---

**9.** MCA § 11–51–75 provides in pertinent part that "[a]ny person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment. If the judgment be reversed, the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities."

**10.** The plaintiff contends that the opinions of the Madison County Circuit Court are entitled to full faith and credit pursuant to Title 28 U.S.C. § 1738 which provides in pertinent part that "[s]uch Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are ·taken."

are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. *Hightower v. Texas Hospital Association*, 65 F.3d 443 (5th Cir.1995), citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment, then, tasks the court with determining not only whether there are material fact issues in dispute, but also, if there are none, whether under the applicable law the moving party is entitled to judgment as a matter of law. *Douglass v. United Services Automobile Association*, 65 F.3d 452, 458 (5th Cir.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. *PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT: THE MATTER OF FULL FAITH AND CREDIT*

█ The plaintiff argues to this court that the defendants in the instant case should be collaterally estopped from relitigating the issue of whether they acted in an arbitrary, capricious, unreasonable and/or discriminatory manner in reviewing, processing and/or acting upon the plaintiff's building permit request. This issue, says plaintiff, has been fully litigated and finally rendered by Judge Toney, and collateral estoppel applies. So, the plaintiff asks this court to enter a partial summary judgment against the defendants, finding that they acted in an arbitrary, capricious, unreasonable and discriminatory manner when they denied the plaintiff's request for a building permit, thereby violating the plaintiff's constitutional right to equal protection and due process under the Fifth and Fourteenth Amendments of the United States Constitution. According to the plaintiff, the extensive nature of the hearings and proceedings before the City of Madison and the Madison County Circuit Court satisfy the requirement of judicial finality and qualify for the application of the principles of collateral estoppel pursuant to the Full Faith and Credit Act, Title 28 U.S.C. § 1738.

The defendants respond that none of Judge Toney's opinions was final, that the opinions were never ripe for appeal, and that they were eventually recalled because the entire controversy between the plaintiff and the City of Madison became moot. Moreover, say defendants, the plaintiff's appeals to the Madison County Circuit Court were dismissed without prejudice. Therefore, say defendants, inasmuch as there was no final adjudication in state court, there is no basis under Mississippi law for the application of collateral estoppel or full faith and credit under Title 28 U.S.C. § 1738. This court agrees.

"A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); and *Parsons Steel v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986) (holding that under the Full Faith and Credit Act, Title 28 U.S.C. § 1738, a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give); *Texas Employers' Insurance v. Jackson*, 820 F.2d 1406, 1422 (5th Cir. 1987), *cert. denied*, 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989) (holding that the federal court will be bound by the decision only if the state court regards the issue as final and beyond recall by the court issuing it). Furthermore, Title 28 U.S.C. § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982). Instead, "the statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985).

Mississippi has not directly addressed whether a court's orders and opinions issued prior to the case becoming moot may still have preclusive effect in any future litigation. Still, certain Mississippi jurisprudence bears on the matter.

In *Etheridge v. Webb*, 210 Miss. 729, 742, 50 So.2d 603, 606 (1951), the Mississippi Supreme Court stated that where a question of fact essential to a judgment is actually litigated and determined by a *valid and final judgment*, that determination is conclusive between the parties in a subsequent action on a different cause of action, citing A.L.I., Restatement of Judgments, Sec. 68 (emphasis added).

Further, Rule 54(a) of the Mississippi Rules of Civil Procedure defines a "judgment" as a "final decree and any order from which an appeal lies." The Comment to Rule 54 of the Mississippi Rules of Civil Procedure states in pertinent part that,

there are several different stages that lead to the creation of a judgment that is final and appealable. It is important to differentiate the various steps that are part of this process. The first distinction is between the adjudication, either by a decision of the court or a verdict of the jury, and the judgment that is entered thereon. The terms "decision" and "judgment" are not synonymous under these rules. The decision consists of the court's findings of fact and conclusions of law; *the rendition of judgment is the pronouncement of that decision and the act that gives it legal effect.* A second distinction that should be noted is between the judgment itself and the "filing," or the "entry," of the judgment. A judgment is the final determination of an action and thus has the effect of terminating the litigation; it is "the act of the court." "Filing" simply refers to

the delivery of the judgment to the clerk for entry and preservation. The "entry" of the judgment is the ministerial notation of the judgment by the clerk of the court pursuant to Rule 58; however, it is crucial to the effectiveness of the judgment and for measuring the time periods for appeal and the filing of various motions. (emphasis added)

Additionally, Mississippi Code Annotated § 11–51–3 states that only final judgments are subject to appeal. *See Sanford v. Board of Supervisors, Covington County,* 421 So.2d 488, 490 (Miss.1982) (holding that there can be no appeal without a final judgment on the merits).

In addition to the case law, Mississippi Code Annotated § 11–51–3 and Rule 54(a) of the Mississippi Rules of Civil Procedure, this court also relies on Restatement (Second) of Judgments § 28 [11] Comment (a) (1982) which addresses the inability to obtain review as the basis for an exception to the rule of issue preclusion or collateral estoppel. The Comment notes that "[t]here is a need for an analogous exception to the rule of preclusion when the determination of an issue is plainly essential to the judgment but the party who lost on that issue is, for some other reason, disabled as a matter of law from obtaining review by appeal.... Such cases can arise, for example, because the controversy has become moot...."

In the instant case, Judge Toney issued written decisions and remanded the case to the City of Madison for further action in accordance with his findings. But neither Judge Toney nor the parties filed a judgment. No entry of judgment was indicated by the clerk of the court.

Judge Toney also entered a decision directing the City of Madison to process and to issue to the plaintiff a building permit;

---

**11.** The Restatement (Second) of Judgment § 28 provides in pertinent part that, [a]lthough an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action

between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action;....

however, before this could be done, the case became moot when the owner sold the property in question, thereby rendering it no longer available for the development that was the subject of the controversy. Judge Toney dismissed the plaintiff's appeals to the Madison County Circuit Court without prejudice.

The plaintiff's claims, thus, were never set forth in a valid and final judgment which would have been conclusive of the questions before the court.[12] Consequently, the defendants never had the opportunity to appeal Judge Toney's decisions to the Mississippi Supreme Court because those decisions never became final.[13] Therefore, this court finds that Mississippi would not give Judge Toney's decisions preclusive effect inasmuch as his written opinions were only decisions and not valid and final judgments. Since plaintiff's motion for partial summary judgment necessarily depends upon a holding by this court that the doctrine of collateral estoppel here applies, a holding this court declines to make, plaintiff's motion for partial summary judgment must be denied.

## V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: THE MATTER OF LEGISLATIVE IMMUNITY

The defendants contend that individuals who serve as local legislators are absolutely immune for civil liability for their actions taken in furtherance of legislative duties. The plaintiff responds that if any immunity may be claimed by the Mayor and the Aldermen, then it may be qualified immunity at most, but not absolute immunity.

**12.** See Mississippi Code Annotated § 11–51–3, providing that an appeal will not vacate a judgment or decree, thus the judgment remains conclusive until is it overturned on appeal.

**13.** The plaintiff argues that the City of Madison did not appeal any of the three opinions issued by Judge Toney and did not request that any of the them be vacated or rescinded.

Of course, the principle is well ensconced that local legislators are absolutely immune from suit under Title 42 U.S.C. § 1983 for actions which are defined as "legislative duties." *Hughes v. Tarrant County, Texas,* 948 F.2d 918, 920 (5th Cir.1991) (citations omitted). The Fifth Circuit recognizes that, "[n]ot all actions taken by an official with legislative duties are protected by absolute immunity—only those duties that are functionally legislative." *Hughes,* 948 F.2d at 920, citing *Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 135 (5th Cir.1986). In other words, only legislative acts are entitled to absolute immunity, while nonlegislative or administrative acts are only entitled to qualified immunity. *Hughes,* 948 F.2d at 920.

The Fifth Circuit in *Hughes* noted that two different tests may be employed to determine whether the actions of a legislator are legislative duties or administrative duties. Quoting the First Circuit decision of *Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984), which cites Developments in the Law–Zoning, 91 Harv.L.Rev. 1427, 1510–11 (1978), the *Hughes* Court set forth these two tests as follows:

The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decision making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the im-

However, inasmuch as the case had become moot and there was no judgment to be vacated, the plaintiff cannot be heard to argue that a motion to vacate or amend judgment was nevertheless required of the defendants. Furthermore, Mayor Hawkins's attempt to bring a taxpayer's appeal of Judge Toney's decisions was dismissed by the Mississippi Supreme Court as premature.

pact of the state action." If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.

See *Hughes*, 948 F.2d at 921, citing *Cutting*, 724 F.2d at 261.

The plaintiff argues that the City of Madison's actions in the instant case singled him out to be treated differently from others. Thus, the plaintiff argues that the actions of Mayor Hawkins and Aldermen Johnson and Clingan–Smith were administrative only, and not entitled to anything more than qualified immunity at best. However, this court finds it apparent from the record that the plaintiff was the only applicant for a building permit to erect a multi-family dwelling in the vicinity in question. The plaintiff points to no others who were permitted to proceed with similar plans for such development. Thus, the plaintiff was not being treated differently from others.

Moreover, the scrutiny focused on the plaintiff's plan for development by the City of Madison derived from its broad policy concerns regarding how the business community should continue to appear in the face of commercial development, and what costs the taxpayers should bear relating to the construction of supporting infrastructure. The Board of Aldermen were in session; votes were taken; the Mayor exercised her statutory right to exercise a veto which the Aldermen were unable to override; and the plaintiff pursued his statutory right to appeal the decision of the City of Madison to the Madison County Circuit Court. Each time the plaintiff returned to the Board of Aldermen, the legislative process began anew, with the Board of Aldermen voting for approval of the plaintiff's request and the Mayor exercising her right to veto.

Next, the plaintiff makes no showing that the Board of Aldermen in the instant case acted arbitrarily or outside the legislative process. For instance, in *Summer-*

*chase Limited Partnership I v. City of Gonzales,* 970 F.Supp. 522 (M.D.La.1997), the Board of Aldermen for the City of Gonzales denied a developer's request for a building permit and attempted to foreclose the matter by declaring a moratorium and refusing to receive the developer's renewed application for a permit or have a hearing on the matter. The district court granted in part and denied in part the City's motion for summary judgment, finding that a genuine issue of material fact existed where the Board of Aldermen simply had declared a moratorium and refused to accept permit applications, and that the plaintiff should be permitted to proceed with his argument that this was an arbitrary decision by the Board of Aldermen in violation of procedural due process.

Unlike the *Summerchase* case, the Board of Aldermen in the instant case approved the plaintiff's permit, but could not override the Mayor's veto. A legislative process clearly was followed in each instance and the plaintiff eventually succeeded in that process. But for the intervening circumstance involving sale of the property in question, the plaintiff would have been entitled to proceed with the apartment complex he proposed.

In *Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the United States Supreme Court described the historical rationale for the doctrine of absolute legislative immunity. "Legislators," said the Supreme Court, "are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators.... The holding of this Court in *Fletcher v. Peck,* 10 U.S. 87, 6 Cranch 87, 130, 3 L.Ed. 162, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned." *Tenney,* 71 S.Ct. at 788, citing *State of Arizona v. State of California,* 283 U.S. 423, 51 S.Ct. 522, 526, 75

L.Ed. 1154 (1931); see also Lynch v. Cannatella, 810 F.2d 1363, 1374 (5th Cir.1987) (state legislators must not be deterred from taking actions reasonably calculated for the public good).

The Fifth Circuit extended the doctrine of absolute legislative immunity to local legislators such as the individual defendants in the instant case in Hernandez v. City of Lafayette, 643 F.2d 1188, 1193 (5th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); see Dunmore v. City of Natchez, 703 F.Supp. 31, 32 (S.D.Miss.1988) (holding that legislative immunity extends to city council members and that "such immunity for the individual actions of a councilman or board member is limited to conduct in furtherance of their legislative duty").

The above jurisprudence when applied to the pivotal facts here persuade this court that the individual defendants Mayor Mary Hawkins, Alderman Tim Johnson, and Alderman Lisa Clingan–Smith acted in accordance with their respective legislative duties in the instant case, and are entitled to absolute immunity from § 1983 and § 1985 liability for those actions.

## VI. THE MOTION FOR SUMMARY JUDGMENT AS IT PERTAINS TO THE CITY OF MADISON

The defendants also seek summary judgment on behalf of the City of Madison, arguing that review of municipal zoning is within the domain of the states and should seldom be the concern of federal courts. See FM Properties Operating Company v. City of Austin, 93 F.3d 167, 173–74 (5th Cir.1996), citing Shelton v. City of College Station, 780 F.2d 475, 477 (5th Cir.) (en banc), cert. denied, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566, and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). Defen-

dants argue that there has been no taking of the owner's land without just compensation in the instant case, thus, there can be no constitutional claim on this basis. See Hernandez v. City of Lafayette, 643 F.2d 1188, 1197 (5th Cir.1981) (no constitutional claim under the just compensation clause of the Fifth Amendment to the United States Constitution unless the zoning law or ordinance in question deprives the actual land owner of an economically viable use of his land). Defendants further argue that no due process or equal protection violations have occurred, and that no civil conspiracy has been perpetrated against the plaintiffs.

### a. No "Taking" without "Just Compensation"

The plaintiff argues that the City of Madison required a forty-foot buffer to be ceded to the City without just compensation prior to the issuance of a building permit. According to the plaintiff, this requirement constitutes a violation of his rights under the Fifth Amendment.[14] However, the plaintiff is not the owner of the property in question and nothing in the record shows that anything was taken from the plaintiff himself. In order to raise a viable claim under the "Takings Clause" of the Fifth Amendment, the owner of the property must be able to show that he has been deprived of every economically viable use of his land. See Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (rezoning did not exclude all economically viable uses of plaintiff's property); Penn Central Transportation Company v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 2666 n. 36, 57 L.Ed.2d 631 (1978) (Fifth Amendment taking requires that all economically viable uses of owner's property

14. The relevant portion of the Fifth Amendment to the United States Constitution provides that ". . . nor shall private property be taken for public use, without just compensation." Although the language of the "Takings Clause" is couched in terms of "private property", it is recognized that the "Takings Clause" also applies to "independently held and controlled property of a state or of a local subdivision. . . ." U.S. v. Carmack, 329 U.S. 230, 242, 67 S.Ct. 252, 257, 91 L.Ed. 209, 217 (1946); see also U.S. v. 50 Acres of Land, 469 U.S. 24, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984).

be eliminated); *accord Maher v. City of New Orleans,* 516 F.2d 1051, 1065 (5th Cir.1975) (no taking under Fifth Amendment even if most profitable economic use is precluded), *cert. denied,* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976); and *Trustees Under the Will of Annie Burges Pomeroy v. Town of Westlake,* 357 So.2d 1299, 1304 (1978) (unconstitutional taking of private property does not result merely because the owner is unable to develop it to its maximum economic potential). Of course, the owner of the property in the instant case makes no claim that every viable economic use of his property has been precluded by the City of Madison. Moreover, the property in question has been sold, presumably to the owner's economic advantage.

Furthermore, a property owner does not suffer a violation of his rights under the "Takings Clause" of the Fifth Amendment until that owner unsuccessfully has attempted to obtain just compensation through the procedures provided by the State for that purpose. *See Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985). In other words, a takings claim is not ripe until the claimant has unsuccessfully sought compensation from the state. As stated in *Williamson County,* "because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action." 105 S.Ct. at 3120 n. 13. There is nothing in the record of the instant case to show that the owner of the property in question ever sought compensation in any Mississippi court on the basis of an alleged taking by the City of Madison.

Next, the "Takings Clause" of the Fifth Amendment does protect property interests other than just fee simple ownership of land. *See Dolan v. City of Tigard,* 512 U.S. 374, 384, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304 (1994) (Fifth Amendment protects right to exclude others), and *Nollan v. California Coastal Commission,* 483 U.S. 825, 831, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987) (same). However, as the Eleventh Circuit noted in *Corn v. City of Lauderdale Lakes,* 95 F.3d 1066 (11th Cir.1996) (hereinafter *"Corn II"*), no authority holds that denial of the right to proceed with a particular development project requires just compensation when the denial substantially advances legitimate governmental interests and does not deny the landowner all or substantially all economically viable use of his land. Furthermore, said the Eleventh Circuit, while the property rights protected by the Fifth Amendment are created and defined by state law, *see Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 2901, 120 L.Ed.2d 798 (1992), the Fifth Amendment does not require payment of just compensation for every deprivation of a right recognized by state law. "Property as that word is used in the 'Takings Clause,' said the Eleventh Circuit, is defined much more narrowly than in the due process clauses." *See Corn II,* 95 F.3d at 1075, citing *Pittman v. Chicago Board of Education,* 64 F.3d 1098, 1104 (7th Cir.1995), *cert. denied,* 517 U.S. 1243, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996); and *Pro–Eco, Inc. v. Board of Commissioners of Jay County, Indiana,* 57 F.3d 505, 511 n. 6 (7th Cir.), *cert. denied,* 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995). Thus, concluded the Eleventh Circuit, citing *Scott v. Greenville County,* 716 F.2d 1409, 1421–22 & n. 20 (4th Cir.1983), "entitlement to a building permit" is not property protected by the Fifth Amendment's "Takings Clause." Even if certain property interests may not be taken without due process, they may be taken without paying just compensation. *Corn II,* 95 F.3d at 1075.

Based on the foregoing authority, this court finds no genuine issue of material

fact to be resolved with regard to any claim of taking without just compensation. The plaintiff cannot be heard to argue that some equitable interest had been taken from him, particularly where his option to purchase the property in question expired on September 30, 1994, and the property eventually was sold. Therefore, the City of Madison shall be entitled to summary judgment as a matter of law on the plaintiff's "taking without just compensation" claim.

### b. *Plaintiff's Substantive and Procedural Due Process Claims*

■ In *Corn v. City of Lauderdale Lakes,* 997 F.2d 1369 (11th Cir.1993) (hereinafter *"Corn I "*), a case heavily relied upon by the defendants which involved a zoning dispute, the Eleventh Circuit held that deprivation of a property interest is of constitutional stature only if it is undertaken for an improper motive and by means that are arbitrary, capricious and without rational basis. The Eleventh Circuit noted that many interests will provide a rational basis for governmental action restricting land use such as: (1), "family values, youth values, and the blessings of quiet seclusion," *Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974); (2), legitimate zoning interests, including protection from the "ill effects of urbanization," *Agins v. City of Tiburon,* 447 U.S. 255, 261, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980); (3), the exclusion of industry from residential areas, *Village of Euclid v. Ambler Realty Company,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); and, (4), the regulation of traffic and noise, *City of Memphis v. Greene,* 451 U.S. 100, 126–29, 101 S.Ct. 1584, 1600–01, 67 L.Ed.2d 769 (1981), and *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

Of course, plaintiff argues that the instant case does not involve a zoning dispute. The plaintiff insists that the analysis of his constitutional claims in the instant case should not be based on

whether a zoning ordinance was properly enacted by the City of Madison because there is no enactment issue before the court. Instead, plaintiff says that he is attacking the functional process followed by the City of Madison regarding the processing and issuance of the building permit he requested.

This court agrees, and the record bears out, that the plaintiff in the instant case challenges the process through which he was put by the City of Madison before he finally obtained the requested authority to proceed with his apartment project. However, contrary to the plaintiff's argument that the process was merely administrative, this court already has determined that the process was legislative in nature and that the individual defendants, local legislators implementing that process, were entitled to absolute legislative immunity from claims under § 1983 for their legislative acts. "When the mayor of a municipality vetoes an ordinance passed by the city's legislative body, [she] performs a legislative function and is entitled to absolute immunity from a civil suit complaining about actions taken in [her] legislative capacity." *Hernandez v. City of Lafayette,* 643 F.2d at 1194. Thus, in this court's view, the finding that the Mayor and the two Aldermen are entitled to legislative immunity shields the City of Madison as well, based on the facts pleaded by the plaintiff, even if the City of Madison itself would not be entitled to the benefit of absolute legislative immunity. For instance, in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the United States Supreme Court denied a municipality the benefit of absolute legislative immunity because the municipality had engaged in uncompensated takings of property and had enacted unconstitutional zoning laws. The *Owen* Court also denied the municipality qualified immunity under § 1983 based on the good faith of its officials, reasoning that the concerns justifying the instances where it had conferred qualified immunity

under § 1983 on governmental officials in the past were less compelling, if not wholly inapplicable, when the liability of the municipal entity was at issue. *Owen,* 100 S.Ct. at 1416.

In the instant case, the liability of the City of Madison lacks the footing described by the *Owen* Court. This court's holding forecloses the plaintiff's "taking without compensation" claim, and, as the plaintiff points out, there is no allegation that the City of Madison enacted any unconstitutional zoning laws.[15] The plaintiff's due process claims against the City of Madison simply take issue with the Mayor and two Aldermen concerning the Mayor's repeated vetoes of the plaintiff's apartment project through a process which this court has found to be legislative in nature, thereby entitling the Mayor and the Aldermen to absolute legislative immunity as local legislators in accordance with *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1193 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); and *Dunmore v. City of Natchez,* 703 F.Supp. 31, 32 (S.D.Miss.1988). There is no other assertion which is applicable to the City of Madison upon which a due process claim may be based.

Furthermore, it does not matter whether the process through which the plaintiff was put was without error. "The power to decide, to be wrong as well as right on contestable issues, is both a privilege and curse of democracy." *FM Properties,* 93 F.3d at 174, citing *National Paint & Coatings Ass'n v. City of Chicago,* 45 F.3d 1124, 1127 (7th Cir.), *cert. denied,* 515 U.S. 1143, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995). "[T]he due process clause does not require a state to implement its own law correctly, [nor does] [t]he Constitution . . .

insist that a local government be right." *Id.* at 174, citing *Gosnell v. City of Troy,* 59 F.3d 654, 658 (7th Cir.1995) (citations omitted). "Converting alleged violations of state law into federal . . . due process claims improperly bootstraps state law into the Constitution." *Stern v. Tarrant County Hospital District,* 778 F.2d 1052, 1056 (5th Cir.1985) (en banc), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986).

Finally, this court finds instructive the district court's decision in *Nello L. Teer Company v. Orange County,* 810 F.Supp. 679 (M.D.N.C.1992), where the court held that denial of a discretionary permit does not create liability under the United States Constitution because there is only the expectation of a permit which is not, in itself, a property right. *Id.* at 685; *rev'd on other grounds,* 993 F.2d 1538 (4th Cir. 1993) (if a local zoning authority possesses "[a]ny significant discretion" in granting a permit, there is no cognizable property interest in the issuance of that permit), citing *Gardner v. Baltimore Mayor and City Council,* 969 F.2d 63, 68 (4th Cir. 1992) (§ 1983 does not empower to sit as a super-planning commission or a zoning board of appeals, and does not constitutionalize every run-of-the-mill dispute between a developer and a town planning agency).

Therefore, based on the foregoing, this court finds no genuine issue of material fact to be resolved with regard to the plaintiff's due process claims and the City of Madison shall be entitled to summary judgment as a matter of law.

### c. *Equal Protection*

Plaintiff next argues that the defendants' actions in this case violated the

---

15. Of course, even if the plaintiff raised a constitutional claim with regard to a city ordinance, where it is shown that the reason for enacting an ordinance involves a legitimate concern of the governmental authority and is at least debatable, there is no substantive due process violation. *FM Properties,* 93 F.3d at 175, citing *Village of Euclid v. Ambler Realty* *Company,* 272 U.S. 365, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926); *Shelton v. City of College Station,* 780 F.2d 475, 477 (5th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566, and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986), citing *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981).

Equal Protection Clause of the "Fifth"[16] and Fourteenth[17] Amendments of the United States Constitution. There is no equal protection clause contained in the Fifth Amendment to the United States Constitution. The Equal Protection Clause of the Fourteenth Amendment essentially requires that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). In order for an action to be constitutional, it "is enough that the State's action be rationally based and free from invidious discrimination." *See Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

The plaintiff's complaint bases his equal protection claims on the actions of the Mayor and Aldermen, and on the findings of the Circuit Court of Madison County that these actions were arbitrary and capricious. This court already has held that the decisions of Judge Toney are not to be given preclusive or collateral effect in the instant case. So, any equal protection claim based on the premises that Judge Toney's decisions control this determination must fail for the reasons already stated.

■ The plaintiff directs this court's attention to the deposition testimony of Victor Gray Lewis, a city planner who expressed his personal opinion that the City of Madison discriminated against the plaintiff. This deposition is not of record; however, even so, the deposition presents nothing more than Lewis's opinion that the plaintiff was discriminated against and that the actions of the Mayor and Aldermen were arbitrary and capricious. Even if this deposition excerpt were before this court, this excerpt of a personal opinion falls far short of asserting the proper predicate for an equal protection claim.

■ Next, relative to plaintiff's argument that he was singled out and, thus exposed to disparate impact, this court turns to instructive United States Supreme Court decisions. The United States Supreme Court has instructed time and again that disparate impact alone will not suffice to state an equal protection violation; otherwise, any law could be challenged on equal protection grounds by whomever it has negatively impacted. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 2051–2052, 48 L.Ed.2d 597 (1976). So, a party who wishes to make out an equal protection claim must prove "the existence of purposeful discrimination" motivating the state action which caused the complained-of injury. *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987); *Arlington Heights v. Metropolitan Housing Development Corporation,* 429 U.S. 252, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Davis,* 96 S.Ct. at 2047. "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable

16. The Fifth Amendment to the Constitution of the United States provides that "[n]o person shall be held to answer for a capital crime, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use, without just compensation." There is no equal protection clause contained in the Fifth Amendment.

17. Section 1 of the Fourteenth Amendment United States Constitution provides in part that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

group." *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir.1995), quoting *United States v. Galloway,* 951 F.2d 64, 65 (5th Cir.1992).

The plaintiff in the instant case does not name the identifiable group to which he belongs. There is nothing to show that the plaintiff was denied a building permit while others similarly situated were being issued permits either with no objection or with little resistance. The deposition testimony of Victor Gray Lewis does not establish an equal protection claim. A naked allegation of disparate impact alone is insufficient to support the claims. Therefore, this court finds no genuine issue of material fact and hereby grants summary judgment in favor of the City of Madison on the plaintiff's equal protection claim.

## VII. *CIVIL CONSPIRACY*

The plaintiff contends that the actions of Mayor Hawkins and Aldermen Johnson and Clingan–Smith constituted a conspiracy under color of state law, thereby providing to plaintiff a cause of action for conspiracy pursuant to Title 42 U.S.C. § 1985. Title 42 U.S.C. § 1985(1) addresses conspiracies aimed at preventing a public official from performing his duty, while § 1985(2) 2 focuses upon conspiracies to obstruct justice. Section 1985(3), which embraces the acts of two or more persons in conspiring to, or going in disguise to, deprive any person of certain rights, takes center stage here. *See Holdiness v. Stroud,* 808 F.2d 417, 424 (5th Cir.1987). The essential elements of a cause of action brought under § 1985(3) are found in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338, 348 (1971), and are as follows:

A complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws." It must then assert that one or more of

the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

So, in order to maintain a cause of action pursuant to § 1985(3), the plaintiff must show "class-based invidious discrimination." *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). This means that the conspiracy must have as its purpose not only the deprivation of equal protection of the laws, but also a racial or other class-based discriminatory motivation. *Id.,* 103 S.Ct. at 3356. "[N]ot all classes or categories of individuals that can be imagined merit section 1985(3) protection. A plaintiff must show membership in some group with inherited or immutable characteristics (e.g., race, gender, religion, or national origin), or that the discrimination resulted from the plaintiff's political beliefs or associations." *Galloway v. State of Louisiana,* 817 F.2d 1154, 1159 (5th Cir.1987), citing *Kimble v. D.J. McDuffy, Inc.,* 623 F.2d 1060, 1066 (5th Cir.1980).

In order to prove his claim in the instant case, the plaintiff must prove that a class or racially-based discriminatory animus was the force which motivated the Mayor and Aldermen to conspire to block the plaintiff's request for a building permit, and not merely a disagreement over the best economic use for a tract of land. *Id.;* and *Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788 (5th Cir.1989). Section 1985(3) was not intended to reach conspiracies motivated by bias toward others because of their economic views, status or activities. *Scott,* 103 S.Ct. at 3361.

Finally, plaintiffs who assert conspiracy claims under the civil rights statutes must plead operative facts upon which their claim is based. Mere conclusory allegations are insufficient. *Holdiness v.*

*Stroud,* 808 F.2d at 424; *Way v. Mueller Brass Co.,* 840 F.2d 303 (5th Cir.1988). Giving the plaintiff's complaint the broadest of latitude, this court finds no such operative facts in support of the plaintiff's § 1985 claim. The plaintiff's complaint asserts that the Mayor, Aldermen, and perhaps others, used their collective efforts and influence to deprive the plaintiff of equal protection by denying the plaintiff's request for a building permit; however, plaintiff's complaint does not assert that the Mayor, Aldermen, and others were motivated by any racial or class-based animus. Accordingly, this court finds no genuine issue of material fact to be resolved and that the City of Madison is entitled to summary judgment as a matter of law on the plaintiff's claim of civil conspiracy.

## VIII. *SECTION 1986*[18]

 A federal court's jurisdiction over Title 42 U.S.C. § 1986 claims is contingent upon the court's finding of a cause of action under § 1985. *Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788, 795 (5th Cir.1989). In the absence of a viable claim under Title 42 U.S.C. § 1985, plaintiff's complaint fails to state a claim upon which relief can be granted under Title 42 U.S.C. § 1986. *Galloway v. State of Louisiana,* 817 F.2d 1154, 1159 (5th Cir.1987); and *Rhodes v. Mabus,* 676 F.Supp. 755, 760 (S.D.Miss.1987). Therefore, finding no genuine issue of material fact and that the embrace of the applicable law negates the thrust of this claim, this court grants the City of Madison's motion for summary judgment on the plaintiff's claims under Title 42 U.S.C. § 1986.

## IX. *TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS*

Finally, the plaintiff's complaint asserts that Mayor Hawkins and Aldermen John-

son and Clingan–Smith and other unnamed defendants interfered with the plaintiff's right to engage in the business of building and operating an apartment complex. Plaintiff contends that this was interference with a business relationship or contract under color of state law and, thus, is actionable under Title 42 U.S.C. § 1983. Inasmuch as this court already has concluded that these defendants are entitled to absolute immunity from liability under § 1983 for their legislative acts, the defendants' motion for summary judgment also shall be granted with regard to this claim for the reasons previously stated.

## X. *CONCLUSION*

This court finds that the defendants have met their burden of showing that there are no material fact issues to preclude granting summary judgment on the issues of legislative immunity on behalf of the individual defendants in this case. Thus, the individual defendants Mayor Mary Hawkins, Alderman Tim Johnson, and Alderman Lisa Clingan–Smith are entitled to the benefit of absolute immunity and to summary judgment on this issue as a matter of law.

Additionally, having found that the defendants are entitled to summary judgment on the question of issue preclusion, this court will not give preclusive or collateral estoppel effect to the decisions of Honorable John B. Toney, Circuit Judge for the Circuit Court of Madison County, Mississippi. Plaintiff's motion for partial summary judgment, based upon Judge Toney's decisions, and supportive of a finding of preclusive or collateral estoppel is denied.

---

18. Title 42 U.S.C. § 1986 provides in pertinent part that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or re-

fuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; ..."

Furthermore, this court finds no basis for the plaintiff's constitutional claims against the City of Madison under Title 42 U.S.C. §§ 1983, 1985 and 1986. Therefore, the City of Madison is entitled to summary judgment as a matter of law.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the motion of the plaintiff for partial summary judgment on the issue of liability (**docket # 43**) is hereby denied.

**IT IS FURTHER ORDERED AND ADJUDGED** that the motion of the individual defendants to dismiss the plaintiff's complaint against them because the individual defendants are entitled to absolute legislative immunity (**docket # 8**) is subsumed by and granted in this court's award of summary judgment in favor of the individual defendants on this issue.

**IT IS ALSO ORDERED AND ADJUDGED** that the motion of the City of Madison for summary judgment (**docket # 41**) is hereby granted. A separate judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure shall be entered by the court.